## Commonwealth ex. rel. Bryan *against* The Pike Beneficial Society.

8ws247
135   327

8 WS 247
215    1630

8 WS 247
32 SC  520

Where a charter of a society provides for an offence, directs the mode of proceeding, and authorizes the society, on conviction of a member, to expel him, this expulsion, if the proceedings are not irregular, is conclusive, and cannot be inquired into collaterally by *mandamus,* action, or any other mode.

The courts have jurisdiction to keep such tribunals in the line of order, and to prevent abuses.

ERROR to the Common Pleas of *Philadelphia* county.

This was a *mandamus* in the court below, issued against the Pike Beneficial Society at the instance of John Bryan, commanding them to restore him to the place and office of member of that society, from which they had expelled him, or show cause to the contrary.

The defendants filed the following return:

That true it is that John Bryan was duly elected and appointed to the place and office of one of the members of the said corporation. But they give the court here further to understand and be informed, that in and by the tenth article of the charter of incorporation of said defendants (a copy whereof, and of the by-laws of said corporation, they annex hereto, and pray may be taken as part of this their return) it is provided, *inter alia,* that should any member, while deriving the benefit allowed by the society, be engaged at his usual business or occupation, or any other employment (except giving the necessary directions to those employed by him), he shall, on being convicted thereof, be expelled.

And the said defendants do further certify, that afterwards, to wit, upon the 28th June 1841, the overseers for and on behalf of said society or corporation, and with that duty charged, reported

thereto, that the said John Bryan, while receiving and deriving the benefits of the society or corporation, had been seen at and about some employment, and in violation of the article thereinbefore referred to. And, thereupon, it was ordered and directed that the secretary notify the said John Bryan to be and appear before the said corporation at their next stated meeting, to show cause (if any he had) why he should not be expelled. And the said defendants further certify and return, that due notice was forthwith given to the said John Bryan to appear as aforesaid; and that afterwards, to wit, upon the 26th July 1841, the said stated meeting, in the said direction and the said notice named, was then and there lawfully convened and held; and that, thereupon, then and there, after hearing the proofs and thereon carefully deliberating, it was resolved that the said John Bryan was guilty of the said charge, and had been so employed while deriving the benefits aforesaid; and then and there, by virtue and in pursuance of the eleventh article of the charter aforesaid, he, the said John Bryan, was convicted thereof by the concurrence and votes of two-thirds of the members present; and was then and there and thereby expelled of and from the said society or corporation, and of and from the place and office of one of the members or corporators aforesaid.

And that, therefore, they cannot readmit and restore the said John Bryan to the said place or office aforesaid, together with the liberties, privileges and franchises thereto belonging, as in and by the writ they are commanded.

Article IX. When any member, after twelve months' fellowship, is rendered incapable, by indisposition or injury, of attending to his usual business, he shall, if entitled, receive not less than four, nor more than six dollars per week, until his restoration to health; in case of death, fifty dollars shall be allowed towards defraying his funeral expenses: Provided, nevertheless, that should the indisposition of a member arise from insanity, old age, or other calamity likely to continue, the society shall have power, after the space of one year, to reduce the allowance in such case to a sum not below two dollars per week.

Article X. Should any member, while deriving the benefit allowed by the society, be detected in the act of gaming or other improper practice, or be engaged at his usual business or occupation, or any other employment (except giving the necessary directions to those employed by him), he shall, on being convicted thereof, be expelled.

The case was tried before PARSONS, J., who delivered the following charge to the jury, which sets forth the circumstances:

John Bryan asks to be restored, by the order of this court, to the rights and privileges to which he is entitled under the laws and regulations of the Pike Beneficial Society in this city. It seems that he was a member of that association; that he had be-

come, in consequence of the loss of health, unable to support himself, and was admitted to the benefits that individuals placed in his condition are entitled to by the regulations of the society. And it further appears that, on the 22d July 1841, a notice was given to the plaintiff that he had been guilty of such acts as deprived him of the support which the association were furnishing him, and he was notified to appear and answer the complaint. It also seems, that in consequence of sickness he was unable to appear at the time and place appointed; that a proceeding was had in his absence, on the 26th July 1841, and he was expelled from the society upon grounds set forth in the resolution requiring his expulsion.

The main inquiry before the court and jury is the validity of this act of the society. This is based upon the 10th article of the constitution of the society. The only act of which it is alleged he has been guilty, is that of painting a latch to his own gate, or, to use the language of some of the witnesses, the "handle" to the gate, a piece of wood used for its fastening, about ten inches long and three inches wide. The only question of fact which has been for the decision of the jury is, whether he painted it or not. The plaintiff denies that he did paint it himself; but the evidence seems to be tolerably clear that he did. The cause mainly turns upon a question of law to be decided by the court. Hence we instruct you, that even if the jury believe that Bryan did do the painting to the gate, as testified to by the witnesses, he has not so far violated the laws of that association as to warrant his expulsion.

Upon a fair construction of the tenth article, under which the society proceeded when they deprived the plaintiff of the benefits that he was enjoying, I do not think he had violated the law. The intention of that regulation was this: If a man were engaged in his own business, so as to perform any labour which would be a pecuniary benefit to himself, or engaged in business on his account, or in the employ of others, whereby gain or advantage would be derived to himself, or any ultimate profit would be received, he was then no longer to receive aid from the association. It is, undoubtedly, based upon this principle; a person to be entitled to support must be poor and unable to labour or engage in any business which would yield him a support; if, after being entered as a beneficiary, it was found that he was labouring for himself, or embarking in business on his own account, or engaged in the employ of others, it was evidence either that he had practised a fraud upon the society in first being admitted to relief, or the cause which entitled him to it had been removed; his health so far restored as not to entitle him to the benevolence of the association more than other members.

But, in my opinion, because a man, with exertion, merely performed some act which would contribute to the comfort of himself

[Commonwealth ex. rel. Bryan v. The Pike Beneficial Society.]

or family, it cannot be said he was engaged in labour or attending to his own business within the provisions of the tenth article of the constitution.  Suppose a shoemaker was a beneficiary, and he should simply sew up a rent in his boot; or a glazier should put a pane of glass into the window of his house, to protect himself and family from the cold; or a painter, as in this case, simply took a porringer of paint, and with a brush painted the latch or fastening to his gate, that had got soiled; can it with propriety be said that he had been labouring for himself for gain, following his own business for profit, or doing any act which brings him within the provision of that article?  Would it be fair from that act to say that he had practised a fraud upon the society when first admitted, or that his health was so far restored that he could labour or engage in usual business?  In my opinion it would not; nor has there been any act of his proved which authorized the society in expelling him.  Hence we instruct you that, under the whole evidence in the cause, the law of that society has not been violated, in this instance, by the plaintiff, and that your verdict ought to be in his favour.

The defendants excepted to the charge.

*St. George T. Campbell*, for the plaintiffs in error, cited 2 Whart. 309.

*Earle*, contra.

The opinion of the Court was delivered by
SERGEANT, J. — This case cannot be distinguished from that of *White and Blacksmith's Society* v. *Vandyke*, (2 Whart. 309).  The charter to the defendants below provides for the offence, directs the mode of proceeding, and authorizes the society, on conviction of the member, to expel him.  This has been done, after a hearing and trial, according to the mode prescribed; at least, there is no allegation of the irregularity of the proceeding.  Under these circumstances the sentence is conclusive on the merits, and cannot be inquired into collaterally either by *mandamus* or action, or in any other mode.  It is like an award made by a tribunal of the party's own choosing; for he became a member under and subject to the articles and conditions of the charter, and, of course, to the provisions on this subject as well as others.  The society acted judicially, and its sentence is conclusive, like that of any other judicial tribunal.  The courts entertain a jurisdiction to preserve these tribunals in the line of order, and to correct abuses; but they do not inquire into the merits of what has passed *in rem judicatam* in a regular course of proceedings.

Judgment reversed, and *venire facias de novo* awarded.