# The Society for the Visitation of the Sick, &c., *versus* The Commonwealth *ex rel.* Max S. Meyer.

| 52 | 125 |
|----|----|
| 135 | 324 |
| 135 | 327 |
| 52 | 125 |
| 29 SC | 2397 |
| 52 | 125 |
| 215 | 3630 |
| 52 | 125 |
| e 32 SC | 520 |

1. The articles, conditions and objects of an association incorporated by the Supreme Court are their charter, and have the same force and effect as if specifically granted by special Act of Assembly; the charter cannot be questioned collaterally.

2. In such charter, where the power of expulsion is conferred and a member in accordance with its requirements has signed the articles, he is bound by 'them, and the fitness of the objects, &c., is not a subject of judicial inquiry.

3. When such member has been regularly tried and expelled, the sentence of the society, acting judicially, cannot be inquired into collaterally, nor can the merits of his expulsion be re-examined.

4. In an association one of whose objects was to provide assistance for sick members; to feign sickness or draw relief after recovery is subversive of the fundamental objects of the association—an act which tends to its destruction, and is within the power of expulsion by the association.

5. A return to a *mandamus* must set forth distinctly and certainly—not argumentatively, inferentially or evasively—all the facts essential to the conviction, both as to the cause and mode of proceeding.

6. A return to a *mandamus* that the relator was, according to the constitution and by-laws of the association, "tried and convicted of the charges," is not sufficient, without showing that the association took proofs which they deemed to be sufficient evidence.

7. A trial for an offence against the laws of such association is not an eccle-

siastical trial concerning matters of conscience, but an ordinary secular affair. *Quære,* how far such trials on Sunday comport with our legislation and institutions.

8. Jews are bound to observe the civil regulations made for the keeping of the Christian Sabbath.

ERROR to the Court of Common Pleas of *Philadelphia.*

This was a *mandamus* on the relation of Max S. Mayer, to restore him to his place as a corporator in The Society for the Visitation of the Sick and Burial of the Dead, from which he had been expelled.

The society was incorporated under the Act of April 6th 1791, Purd. 194, authorizing the creation of corporations by the Supreme Court.

The objects of the association are :—

1. Should a member be taken sick, to visit him and to grant him consolation, advice and assistance.

2. In case any member die, to have him decently buried free of charge, &c.

3. To assist the families of deceased members according to the circumstances and available means of the society.

Every member is required to sign the constitution, and it is provided in it that the society has the right to pass by-laws and to alter, amend and repeal.

By art. IV., § 6, of Constitution :—Every officer or member of this society shall be liable to an impeachment and be expelled or otherwise punished, provided the charge be laid in writing before a general meeting of the society, and the same be signed by the board of managers, or at least six members of the society at large. A copy of the charges must, however, be furnished to the accused, and he must be cited to appear before a stated or special general meeting, in order to defend himself. The majority of the members present at any such meeting shall pronounce on the innocence or guilt of the accused, and in the latter case fix the punishment, but it shall require a vote of two-thirds of all members present, if the fine should amount to $25 and upwards, or the accused be sentenced to a suspension or expulsion from the rights of membership.

By art. III., § 2, of By-Laws :—Any member who feigns himself sick without being so, or who continues to draw relief after his recovery, or otherwise deceives the society by false representations, or is guilty of any criminal offence, or a gross immorality, shall be indicted for such misdemeanor, and upon conviction upon sufficient evidence, be suspended or expelled, according to the judgment of the society.

On the 9th of May 1861, Meyer presented his petition, setting forth that in 1842 he was elected a member of the association, and had faithfully performed his duties as a member ; that on the

[Society, &c. *v.* Commonwealth.]

17th of July, the corporation expelled him without any sufficient cause, and now refuses to permit him to enjoy his rights of membership; and praying that he may be restored, &c.

A return was filed, to which there was a demurrer which was sustained and leave given to amend.

An amended return was filed averring that the relator was, on the 17th day of July 1859, duly tried and convicted, and expelled by said society, at a general meeting, according to the terms of the constitution and by-laws thereof, then and theretofore in full force and effect, and particularly article IV., section 6, of the constitution, and article III., section 2, of the by-laws aforesaid.

And averring further that on the 12th day of July, A. D. 1859, the board of managers of said society at a meeting thereof, duly held, unanimously made the charge against the said relator that he had committed the offences mentioned in said by-laws of feigning himself sick without being so, and continuing to draw relief after his recovery, and directed a copy of said charges, signed by the secretary of the board on their behalf, to be served on the said relator, with a notice to him to attend a special general meeting of the society, to be held on the 14th July next, at a certain hour therein named, at the Juliana Street Synagogue, which copy and notice to attend said meeting, were personally served upon the said relator by the messenger of the said society on the 13th day of July 1859, which notice required the said relator, and notified him to appear then and there to defend himself from said charges which were then and there to be tried by said society : that a special general meeting, duly called, was accordingly held on the said 14th July, at the place aforesaid, according to said notice, all the members of the society resident were present, except six, and a full quorum : that the said relator did not appear at said meeting : that the said society, after waiting more than thirty minutes after the time fixed for the meeting, proceeded to business, and, on motion, a committee of five members was appointed to report upon the subject of said charges against said relator, to meet on the next succeeding Sunday at 8 o'clock A. M., at said synagogue, and notice of the meeting of said committee aforesaid, was immediately thereafter served personally on said relator : that the relator failed to attend before said committee, and they directed notice to be served upon the said relator, that the said charges against him would be tried by the society at their next stated general meeting, to be held at the hour, time and place therein specified, to wit, at the said synagogue on the 17th day of July 1859, at 7½ o'clock, P. M., with a copy of said charges, which notice and copy were accordingly served personally on said 14th July 1859, upon the relator : that at the said stated

general meeting held on said 17th July 1859, accordingly, a full quorum of members were present, and the society proceeded to business duly; and the said relator did not appear, but made default at said meeting, and the said relator was then and there duly, and according to the said constitution and by-laws, tried, and by the unanimous vote of-the members present, each one answering separately, pronounced and convicted as guilty of said charges, and also and immediately afterwards by the unanimous vote of the members present at said meeting, declared to be expelled from the said society, and he was accordingly duly and legally expelled therefrom, and, on motion, notice thereof was thereafter duly served upon him.

The relator demurred, and assigned for cause:—

1. That no sufficient cause of disfranchisement is set forth in the return.

2. That the return does not set forth when the alleged offence was committed by the said Max S. Meyer.

3. That the alleged offence charged is vague and indefinite as to time, place and circumstances, and insufficient to justify his expulsion.

4. That it does not appear that any sufficient notice was given to the said Max S. Meyer of the charge preferred against him.

5. That the return does not set forth when or how the pretended notice of the charge preferred was served on the said Max S. Meyer, or when or how he was cited to appear and defend himself.

6. That the return does not show how or when the said special general meeting was called at which the said Max S. Meyer was expelled.

7. That the return does not show that notice of the holding of the said special general meeting was given to each member of the said society, or that the members thereof were notified of the purpose of holding the same.

8. That the return does not show that the said Max S. Meyer was afforded an opportunity of defending himself against the said charge.

9. That no witnesses were examined in support of the said charge, and the said Max S. Meyer did not admit the same to be true.

10. That the return does not aver that the said charge was proved to be true, or that any evidence of the truth thereof was adduced before the said society.

11. That the return does not set forth that the said society passed judgment upon the said Max S. Meyer that he should be expelled from the said corporation.

12. That the return avers that the said Max S. Meyer was con-

[Society, &c., v. Commonwealth.]

victed and expelled by a vote of the said society without showing that the truth of the charge was first proven, that the relator was convicted of the offence, and that after such conviction he was sentenced to expulsion.

There was judgment for the relator on the demurrer, and the record was removed to the Supreme Court by writ of error.

*W. L. Hirst*, for plaintiff in error, submitted no argument in the paper-book.

*F. C. Brightly*, for defendant in error.—The defendants do not assert on oath that the charges are true.

It is not an incidental right to disfranchise a member of a corporation, it must be done by grant in the charter : 1 Willcock on Corp. § 709; Bagg's Case, 11 Rep. 99. The franchise of a member is a *private right*, differing from an office in a corporation, which is held for its welfare. A member should not be disfranchised for *a minor offence :* 1 Willcock 710. The omission to express such power in the articles of association is an exclusion of it : Butchers' Benef. Association, 11 Casey 151; Butchers' Benef. Association, No. 1, 2 Wright 298 ; Benef. Association of Brotherly Love, Id. 299.

If, on the authority of Commonwealth v. St. Patrick's Benevolent Society, 2 Binn. 448, the power be held to be incidental; the charge here does not fall within any of the classes in that case. It is not a criminal offence, and there has been no conviction; nor an offence against a member's duty as corporator ; nor an offence against the corporator's duty which is indictable. It is to be punished by pecuniary penalty : 2 Willcock, § 226, note.

The averment is indefinite. The return must show *precisely* the cause and proceedings to enable the court to judge of the legality and regularity : 2 Kyd on Corp. 387 ; 2 Willcock, § 226 ; Fischer v. German Society, 3 Harris 351; Reg. v. Mayor of Devon, 11 Q. B. 260.

The notice of trial was defective. Notice from 8 A. M. to 7½ P. M. was not reasonable : 1 Willcock, §§ 691–2.

The indictment provided for by the by-laws means a written, formal accusation, which should have been part of the return, that the court might judge of the sufficiency of the charge.

The return does not show that any evidence was adduced ; there is no averment that the charges were proved : it should be proved or confessed : 2 Willcock, § 240 ; Fischer v. German Society, *supra.*

It does not appear that the committee was called together in accordance with the by-laws, which is fatal when the accused does not appear : Commonwealth v. Guardians of Poor, 6 S. & R. 474–5 ; 2 Willcock, § 233.

2 P. F. SMITH—9

[Society, &c., *v.* Commonwealth.]

The trial took place on Sunday; the service was void being on the same day by Act of 1705, Purd. 922: the subsequent proceedings therefore were void for want of notice: 1 Willcock on Corp., § 691; 2 Id. 223.

The allegation must be direct not argumentative: Tapping on Mandamus 356–7; Reg. *v.* Mayor of Hereford, 6 Mod. 309; Rex *v.* Mayor of Coventry, 2 Salk. 430; Rex *v.* Mayor of Abingdon, Id. 432; Ang. & Ames on Corp., ch. 20, § 8.

If the corporation have another remedy it is no cause of disfranchisement: 2 Kyd on Corp. 87; Id. 76; Evans *v.* Philadelphia Club, 21 Leg. Int. 108.

An averment that accused did not account for the money of the corporation, without averring request and refusal is insufficient: Tapping 355; Rex *v.* Mayor of Wilton, 5 Mod. 259. The summons must be specifically alleged: Tapping 202; 1 Kyd 444–5.

The return should describe the nature of the proof, which must be that allowed at common law: Tapping 204; Rex *v.* Mayor of Wilton, *supra;* Id. 313; Ang. & Ames on Corp., ch. 20, § 8; Rex *v.* Feversham, 8 T. R. 356; Harman *v.* Tappenden, 1 East 562; 1 Willcock on Corp., § 702.

The opinion of the court was delivered, March 26th 1866, by

AGNEW, J.—In the court below Max S. Meyer, the relator, demurred to the return of the society to the alternative *mandamus,* and judgment was given for him. The relator was a member of a society of German Jews, styled "The Society for the Visitation of the Sick and the Burial of the Dead," incorporated under the Act of 6th of April 1791. The first object of the society, set forth in the constitution, is thus stated: "Should a member be taken sick, to visit him, and to grant him consolation, advice and assistance."

The relator was convicted of "feigning himself sick without being so," and of "continuing to draw relief after his recovery," offences declared by by-law, and was expelled therefor. Under the first assigned cause of demurrer it is contended, that the offence charged is not a sufficient ground of disfranchisement.

This is rested upon a want of power to expel for such a cause.

But clearly there is a power both by charter and by common law, by reason of the nature of the offence. The preamble of the constitution sets forth, that the subscribers have united for the sake of forming a society, and adopted the constitution and by-laws, and as a mutual pledge that they mean to observe them fully and faithfully, have severally subscribed their names.

By the article upon membership, the candidate, if elected, is required to sign the constitution, and a failure for thirty days makes his election void. Subjection to the articles of association

[Society, &c., *v.* Commonwealth.]

is therefore a fundamental condition. The 6th section of the 4th article provides: that "Every officer or member of this society shall be liable to an impeachment and *be expelled* or otherwise punished;" and in the latter part of it adds: "but it shall require a vote of two-thirds of all the members present, if the fine should amount to $25 and upwards, or the accused be sentenced to a suspension or *expulsion from the rights of membership.*"

The 2d section of the 9th article provides for the right of the society to pass by-laws, and to alter, amend and repeal. By the 2d section of the 3d article of the by-laws, it is declared that "Any member *who feigns himself sick without being so, or who continues to draw relief after his recovery,* or otherwise deceives the society by false representations, or is guilty of any criminal offence, or a gross immorality, shall be indicted for such misdemeanor, and upon conviction upon sufficient evidence be suspended or expelled according to the judgment of the society." The words indictment and misdemeanor are not used as legal terms, being inaccurate translations from the German, while the offences declared are manifestly not indictable at law.

Under the law of 1791, where the instrument specifying the objects, articles, conditions and name of the association are approved by the attorney-general and the Supreme Court, and enrolled according to law, the persons associating become a corporation according to the objects, articles and conditions contained in the instrument. These become their charter, and have the same force and effect in law, as if they were specifically granted by special act.

There is no analogy between this case and those of The Butchers' Associations, referred to in 11 Casey 151 and 2 Wright 298. They are instances of refusal by this court to approve of the instrument, and of course no charter came into existence. But here we have an instrument duly approved and enrolled, and the powers of the corporation have vested. We are bound by the decision of the attorney-general and of this court, and cannot now question the charter collaterally.

Having the force and effect of law, by the provisions of the act allowing the incorporation, it stands upon a strictly legal foundation, and is no longer a subject of judicial inquiry as to the fitness of its objects, conditions and articles. The assent of the relator to these provisions being a fundamental condition of his membership, the right of expulsion is clearly conferred, and he entered into membership in subjection to it. These principles are sustained by authority. In Black and Whitesmiths' Society *v.* Vandyke, 2 Wharton 312, Chief Justice Gibson asserted that the by-laws of a private corporation like the present, derive their

[Society, &c., *v.* Commonwealth.]

force from assent either actual or constructive; and the party assenting to the charter is consequently bound by everything done in accordance with it—that when he has been regularly tried and expelled, the sentence of the society acting in a judicial capacity, and within its jurisdiction, is not to be questioned collaterally while unreversed by superior authority. If he have been expelled irregularly, the chief justice adds, he has his remedy by *mandamus* to restore him; but neither by *mandamus* nor action can the merits of his expulsion be re-examined.

The same doctrine is asserted in Commonwealth *v.* Pike Beneficial Society, 8 W. & S. 247, and in Toram *v.* Howard Beneficial Association, 4 Barr 519. A stronger case is that of Franklin *v.* Commonwealth, 10 Barr 357, a *mandamus* to restore a relator who was expelled under a by-law prohibiting a member from becoming a soldier in a standing army or voluntarily enlisting as a soldier. Notwithstanding the general impolicy of such a restraint, yet it was held by Gibson, C. J., that a society for mutual assistance in time of sickness or inability to labour not caused by voluntary exposure to extraordinary perils is legal, and that such a society may combine for mutual assistance upon its own terms. Such an objection, he says, would go to the legal existence of the association, which would not have been formed had the condition not been inserted as a fundamental one. If the articles were not lawful, it belonged to the court in the first instance to withhold its certificate.

Against these positions it is attempted to set up as authority the decision of the present chief justice at Nisi Prius in the case of Evans *v.* Philadelphia Club, Legal Int. April 1st 1864, p. 108, afterwards affirmed in banc upon an equal division, the chief justice himself being one of the number. But that case has no resemblance to this. There was no express power of expulsion contained in that charter, and the decision rested on the ground that the offence was not such as fell within the common-law power. Being absent at Nisi Prius, I did not hear that argument, and express no opinion of the points decided; but so far as the question in this cause is involved, I am willing to take the authority of the chief justice in his very learned and able opinion, and come now to the inquiry, was the offence set forth in the return such as justified expulsion. Clearly it was destructive of the objects of the association, and in violation of the true spirit of its fundamental articles. The preamble sets forth in brief but appropriate terms the thought that unlooked-for disease may cast us upon a bed of sickness, and death snatch us away, and the natural desire to find in such times of trial, sincere friends to assist; and that animated by this wish the subscribers united in forming this society. Then follow the objects:—

[Society, &c., *v.* Commonwealth.]

1. Should a member be taken sick, to visit him and to grant him consolation, advice and *assistance.*

2. In case any member die, to have him decently buried *free of charge,* &c.

3. To *assist* the families of deceased members according to the circumstances and *available means* of the society.

To accomplish these purposes the articles and by-laws are made. It is obvious, therefore, that to feign sickness or deceitfully to draw relief after recovery are offences not only fraudulent of the interests, but subversive of the fundamental objects of the association. Every dollar thus wrongfully drawn from the fund devoted to relief detracts so much from the ability of the society to fulfil its duty to its membership.

This position is too clear for argument, and brings the offence directly within the second branch of the admitted power of expulsion, stated by the chief justice in Evans *v.* Philadelphia Club, to wit : "An act against the society which tends to its destruction and injury," or as expressed by Chief Justice Tilghman in The Commonwealth *v.* St. Patrick's Benevolent Society, 2 Binn. 441 : "An offence against his duty as a corporator." To this may be added the case of The Commonwealth *v.* The Philanthropic Society, 5 Binn. 486. These, with the authorities before cited, establish the character of the offence, bringing it within the power of expulsion had the charter not expressly provided for it.

We are therefore brought to consider the regularity of the proceedings set forth in the return to the writ of *mandamus.* Here we are met by very stringent rules for our government, a strictness growing out of the penal nature of the offence and the necessity of protection against improper or unfounded proceedings. It is the rule that the return must set forth distinctly all the facts essential to the conviction both as to the cause of disfranchisement and the mode of proceeding : Commonwealth *ex rel.* Fischer *v.* The German Society, 3 Harris 251, and cases there cited ; Regina *v.* Mayor of Hereford, 6 Mod. 309 ; Rex *v.* Mayor of Coventry, 2 Salk. 430 ; Rex *v.* Mayor of Abingdon, 2 Salk. 432. They must be set forth with sufficient certainty, and not argumentatively, inferentially or evasively : Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny County, 1 Wright 279 ; Commonwealth *ex rel.* Hamilton *v.* The City of Pittsburgh, 10 Casey 522. This certainty *is to a certain intent in general,* which means, says Woodward, J., that which upon a fair and reasonable construction may be called certain without recurring to possible facts that do not appear : Commonwealth *ex rel.* Humes *v.* Commissioners of Allegheny County, 8 Casey 224. With these principles in view we have examined the return, and find it entirely sufficient upon every ground assigned as cause of

demurrer but one. In the main the proceedings are precise, and conform to the charter and by-laws.

But it is not set forth in the return that the relator was found guilty on sufficient evidence. The by-law is express that the expulsion must be founded on "sufficient evidence." I would not say that a private corporation like this, with no power to administer oaths, or to compel one invested with this authority to administer an oath extrajudicially, must try offenders upon oath; but certainly it must appear as a fact stated in the return that they took proofs which they deemed to be sufficient evidence. To meet this demand for proof, it is said the return states he was expelled "according to the terms of the constitution and by-laws," which are referred to and made a part of the return; and, again, that "the said relator was then and there duly, and according to the said constitution and by-laws, tried, and by the unanimous vote of the members present, each one answering separately, pronounced and convicted as guilty of said charges." Now, it is clear, if tried upon proof, it is not alleged as a fact, but is to be inferred only from the assertion that the relator was tried according to the terms of the by-laws. But this is opinion only, and for aught that appears, the fact of service of a copy of the charges, and notice to defend, and his failure to appear, constituted in the judgment of his triers sufficient evidence of his guilt. If a corporation can shelter itself behind a return which constitutes itself the judge of the regularity of its own proceedings, there is no safety for its members. If it choose to return that a member was tried in due course of law, the facts which constitute the course of procedure are simply inferred, because the law requires a certain course, not that these facts are actually averred. It would scarcely be deemed a good summary conviction of a minor offence to say that the defendant was duly summoned on charges preferred, and was duly tried and convicted according to the Act of Assembly in such case provided. There are reasons which strengthen this view. The relator under the act may traverse the return and have the facts tried by a jury. But is the fact of taking sufficient evidence a traversable fact upon this return? If it be, the traverse must deny a mere inference, and not an allegation. In a collateral proceeding the inference would be sufficient, but when the proceeding comes up by a direct appeal to try its regularity, then it seems to me every material and traversable fact must be directly averred. Otherwise it would cover up a multitude of mistrials and endanger the most valuable personal rights. It will not do to expose the citizen to attacks covered up under mere opinion, furnishing no means of legal scrutiny to restore him to membership when unjustly disfranchised.

There is another ground of demurrer which might have been assigned. The return does not aver that the charge made by the

[Society, &c., v. Commonwealth.]

board was in writing, and signed by them. This the charter expressly requires, for the purpose no doubt of having responsible accusers before a member shall be impeached, and as evidencing a solemn accusation made in good faith; but not being assigned as cause of demurrer it is not proper to determine it now.

The question as to the trial on the Sabbath is not raised by the demurrer, and, though a very grave one, was put upon untenable ground in the argument. We are not called upon to decide it. But it may not be amiss, with a view to call attention to it, to notice that this was not an ecclesiastical or church trial, concerning matters of conscience. It was an ordinary secular or business affair, being the same kind of trial which any other corporation might engage in. It might be well to consider how far such trials on Sunday comport with the legislation of the state and the genius of our institutions. It will also be remembered that Jews, who regard the seventh day only as their Sabbath, are bound to observe the civil regulations made for the observance of the Christian Sabbath. This has been repeatedly decided.

Judgment affirmed.

WOODWARD, C. J., concurred in the judgment, but dissented from so much of the reasoning as treats the charges against the relator as ground for disfranchisement.