Ioska Tribe of Red Men et al., Appellants, *v.* Great Council of Red Men et al.

Argued December 11, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*F. Lyman Windolph,* for appellant, cited: Derry Council v. State Council, 197 Pa. 413; Blair Council v. American Mechanics Funeral Benefit Association, 12 Pa. Superior Ct. 29; Commonwealth v. Heilman, 241 Pa. 374; Engle v. Pittsburgh Division No. 90, Brotherhood of Locomotive Engineers, 66 Pa. Superior Ct. 356.

*Alexander M. DeHaven,* and with him *John E. Malone,* for appellee, cited: Commonwealth v. Heilman, 241 Pa. 374; Crow v. Capital City Council, 26 Pa. Superior Ct. 411; Badger v. Aeolian Council, 39 Pa. Superior Ct. 406.

OPINION BY KELLER, J., March 12, 1930:

Bill in equity filed by a local council of a national beneficial society against the State Council to restrain the collection of an increased per capita tax and to enjoin its expulsion from the Order.

The Improved Order of Red Men is a secret beneficial society formed on a federal plan. The system or plan comprises a National Council, State Council, and local councils or tribes. The various local councils or tribes, located within a state, are subject to the authority of the State Council, if one has been constituted; and the State Councils are in turn subject to the authority of the National Council. The National Council has supreme authority over the Order, but exercises its control intermediately through the State Councils, except as to such tribes as are located in states where no State Council has been

formed; as to these tribes it exercises immediate control.

The constitution of the National Council (Art. VII, 49f) gives it power to provide revenue by means of a per capita tax upon the members, for the administration of the government of the council and for the education and care of orphans and the care of widows of deceased members. The plan or system does not, however, contemplate the payment of such per capita tax by the members of the order to the National Council direct. It is to be collected through the agency or machinery of the State Councils and such tribes or local councils as are under its immediate jurisdiction, for want of a State Council.

The State Councils, in turn, have the same power, by their constitutions, to provide revenue by means of a per capita tax upon the members within their jurisdiction for the administration of the State Councils, and for the per capita tax to the National Council, and for the care of widows and the education and care of orphans of deceased members; but the plan does not contemplate the payment of such per capita tax by the members of the order direct to the State Council; it is to be collected through the agency or machinery of the tribes subordinate to them. These last in turn collect from their individual members a per capita tax sufficient to pay the local expenses of the tribe, and the per capita tax of the State Council having jurisdiction over it, which includes the per capita tax imposed by the National Council and provision for the widow and orphan fund; and remit to the State Council which, in turn, remits to the National Council. But it is not a matter of volition whether the State Councils and tribes, respectively, shall collect and remit the per capita tax imposed by the higher body; they are bound to do so or suffer suspension of their privileges in the Order, and perhaps forfeiture of their charters. The language in which the several

constitutions and by-laws are framed might, perhaps, be improved, but the working of the plan or system is obvious from them.

Prior to September, 1926, the per capita tax of the National Council was fixed at ten cents per member, and the by-law framed to put the provision of the constitution into effect was:[1] "Each and every tribal State Council shall pay every year a per capita tax of ten cents for every tribal member." A by-law of the National Council also provided that each and every "tribal State Council shall provide by law for the creation and maintenance of an orphans' fund and shall set aside therefor out of the per capita tax in every year not less than eight cents for every member thereof, both beneficial and non-beneficial, which shall be designated as the orphans' fund, and which shall be held and used by such State Council for no other purpose than the care and education of indigent orphans of deceased members of subordinate branches under its jurisdiction, under such laws, rules and regulations as the National Council and the respective State Councils may from time to time make and provide." The appropriate by-laws of the State Council, prior to September, 1926, framed to put the provisions of the State Council constitution into effect was: "Per capita tax from tribes shall be 15 cents for each member on the books at the close of each six months term; reports from tribes must be forwarded to the State Council on or before the first day of May." This imposed a per capita tax of thirty cents a year out of which ten cents per capita was required to be forwarded to the National Council.

At the session of the National Council held at Detroit in September, 1926, the by-law of said council above referred to was amended so as to read: "Each and every tribal State Council shall pay every year

[1] Throughout this opinion we use, instead of the vivid nomenclature of the order, the equivalent in ordinary speech.

a per capita tax of thirty cents for every tribal member ...... In states where no State Council session will be held prior to the 31st day of December, the Board of State Council officers are hereby authorized, empowered and directed to increase the per capita tax upon the tribes in said state by adding thereto the additional tax hereby embodied, or so much thereof as may be deemed necessary to meet the financial requirements of the State Council treasury. In like manner any tribe may at any regular meeting add such increase or so much thereof as may be deemed necessary to the tribal dues." This by-law was to go into effect immediately, and operated as an immediate increase of twenty cents per capita.

No State Council session was held in Pennsylvania between the National Council meeting at Detroit and December 31, 1926, and pursuant to the change of by-laws of the National Council the board of officers of Pennsylvania State Council on November 20, 1926, notified the several tribes subordinate to it that the National Council per capita tax had been increased from ten to thirty cents, and that the State Council per capita tax was accordingly increased from thirty to fifty cents, payable twenty-five cents with the March report and twenty-five cents with the September report; thus showing that they deemed it necessary to meet the financial requirements of the State Council treasury that the whole increase in the National Council per capita tax should be passed on to the tribes.

The appellant, Ioska Tribe, is a tribe or local council, subordinate to the Pennsylvania State Council. It refused to pay the increased per capita tax (semi-annual payment—25 cents) with the March, 1927 report, and remitted only at the old rate (15 cents). It is evident that if only thirty cents per capita tax was collected in the year and paid to the State Council the amount thus collected would be insufficient to meet the requirements imposed on the State Council by the

National Council, to wit, thirty cents for the National Council tax and at least eight cents for the orphans' fund; and a refusal to comply with the National Council's decree would result in a suspension of the State Council, with its subordinate tribes, and perhaps more serious consequences. Accordingly on June 10, 1927, the State Council suspended Ioska Tribe, and its representatives were refused admission to the annual session of the State Council held at Norristown, June 14 to 16, 1927. At that meeting a resolution, which had been presented the previous year, increasing the per capita tax to forty cents per member was voted on and lost. Appellant contends that by this action the State Council was prevented from requiring payment from the tribes of the increase in the National Council per capita tax. We do not so understand it. The by-laws of the respective councils are not printed in full in the record, but from what is before us we gather that an amendment to the by-laws increasing the State Council per capita tax, for its own purposes, must lie over a year before action; but this cannot affect the tax imposed by the National Council. If the State Council saw fit, it could absorb part of the National Council tax increase out of the excess of its own per capita tax over and above the amount imposed by the National Council; but if it did not elect to do so, and the amount of the State Council per capita tax was insufficient to comply with the decrees of the National Council, the entire increase must be passed on to the tribes and the action of the Board of State Officers remain in force until the adoption of a by-law making provision for the absorption of part of the increased National Council tax out of the State Council's own share of its per capita tax. As the increased National Council per capita tax and the provision for the orphans' fund required the collection by the State Council of at least thirty-eight cents per capita, it is obvious that it could not be met by the old per capita

tax in force prior to September, 1926, and if at the session at Norristown the State Council was unwilling to fix its new per capita tax at only two cents more than this irreducible minimum, it amounted to a decision to continue the tax as fixed by the Board of State Council Officers pursuant to the by-law adopted by the National Council, to wit, fifty cents.

We think the case is governed in principle by Derry Council v. State Council et al., 197 Pa. 413, which was a bill in equity filed by a local council of a similar beneficial association against the State and National Councils, to restrain the collection of a per capita tax. The constitution of the National Council in that case provided for the levy of a per capita tax on every member of the order, in such amount as enacted from year to year by the National Council, to be paid to the National Secretary by the State Council Secretaries; and (the paper books show) also provided that every State Council should pay such per capita tax to the National Council. It made no specific provision for the collection of the tax from the local councils subordinate to the State Councils; but the plan evidently contemplated the payment of the tax by the local councils to the State Council with the right in the National Council to enforce it, and our Supreme Court so construed it, saying: ''The whole plan and scheme of the Order show that the National Council has reserved to itself the right to raise revenue by levying a per capita tax, and it has the right to collect this tax *by proceedings against the local council* or the members themselves...... Neither the liability of the members of the Order *nor of the subordinate council for them* is dependent, in any degree, upon the consent of the State Council.'' While the facts in our case are not identical, the principle involved is the same. As before stated, the constitutions of both the National Council and the State Council of Pennsylvania give them the power to levy a per capita

tax upon their respective members in order to raise revenue for certain purposes; this is enforced in the by-laws of the National Council by a provision that each State Council shall pay a per capita tax for every member; and in the by-laws of the State Council by a provision that each tribe or local council shall pay a per capita tax for every member. No authority is given either of them in their respective constitutions to impose such tax on the *councils* subordinate to them, as distinguished from the *members,* unless these by-laws are construed as carrying into effect the powers given in the respective constitutions. A reasonable construction of the plan or scheme of organization requires that interpretation, for otherwise the plan could not go into effect at all. The action of the National Council increased its per capita tax on each member irrespective of the consent of the State Council or the tribes; their assent thereto, if they desired to retain their standing in the Order was purely ministerial. The only alternative open to them was that already adverted to: They might by appropriate action absorb such part of the increase in the National Council tax, as they saw fit or were able to, out of their own per capita tax, if they could do so and still comply with the decrees of the National Council. As we have seen, an attempt to do this was made at Norristown and failed.

We are not satisfied that the suspension of a tribe for non-payment of per capita tax is governed by the procedure outlined in section 2 of Article XXIV of the by-laws of the State Council. Article IV, Sec. 4, of the constitution provides for five distinct causes for suspending or revoking the charter of a tribe. They are (1) improper conduct; (2) neglecting or refusing to conform to the requirements of the constitution or by-laws of the State Council, &c.; (3) neglecting to hold regular council sessions; (4) neglecting or refusing to make due returns and reports and pay the per capita

tax as required by law; (5) wilful violation of the laws of the Order; but no charter may be *revoked* or *forfeited* without due notice and opportunity for answer and hearing. In the by-laws carrying this section into effect (Art. XXIV) the first section provides that a tribe may be suspended or expelled for (I) refusing or neglecting to make returns or non-payment of the per capita tax; (II) when by death or withdrawal of its members, it is left without a quorum; (III) by not holding a council meeting for three months. But the charter of a tribe shall not in any of the above cases be *forfeited* until it shall have been duly warned, etc. The second section of this article then provides: "If any tribe shall refuse obedience to the lawful commands of the State Council or Great Sachem or violate the laws, usages and customs of the Order, the Great Sachem may with the consent and approval in writing of a majority of the elective state officers, suspend such tribe," with provision for the subsequent procedure in such case. It seems clear to us that this section is not a repetition of the powers to suspend conferred by the preceding section, but refers to a different class of offenses, which are not self-proving and require the preferment of charges and a hearing and conviction; they are included under the first, second and fifth grounds for suspension, etc., enumerated in the constitution, while those mentioned in the first section are embraced in the third and fourth grounds stated in the constitution. As respects the grounds for suspension mentioned in the first section of Art. XXIV of the by-laws, exact compliance with the procedure outlined in section 2, for the causes of suspension therein specified, is not necessary. The appellant was lawfully suspended and in due course lawfully expelled for failure to pay the per capita tax required by the National and State Councils. It failed to take advantage of any of the remedies secured to it under the laws of the order, by answer or appeal to

the State Board of Appeals or to the National Council. It had no standing to appeal to the Courts of the Commonwealth until it had exhausted the remedies provided by the laws of the Order. The appeal might well be dismissed on that ground: Bauer's App., 2 W. N. C. 485; Society for Visitation, &c. v. Meyer, 52 Pa. 125; Myers v. Fritchman, 6 Pa. Superior Ct. 580; Sperry's App., 116 Pa. 391; Com v. Union League, 135 Pa. 301.

While there were minor errors or inaccuracies in certain of the findings of fact of the court below, they do not affect the question at issue in the appeal. The facts are practically not in dispute; it is the application of the law to those facts which is involved. Answering the fourth question involved, however, for what it is worth, we think Rule 71 of the Equity Rules, which deals with exceptions to findings of fact is modified pro tanto by the amendment to Rule 67 relating to requests for findings of fact and conclusions of law, and providing that such requests may be treated by the chancellor merely as suggestions.

The decree is affirmed at the costs of the appellant.