## Great Council of Pa., etc., v. Wingohocking Tribe No. 33, etc.

*Walter L. Sheppard* and *Alexander M. DeHaven*, for plaintiff.
*Frank H. Warner*, for defendant.

LEWIS, J., Dec. 3, 1930. — Plaintiff seeks an injunction restraining the defendants and all others associated with them from employing the ritual of the Improved Order of Red Men, or the name of Wingohocking Tribe No. 33, Improved Order of Red Men of Pennsylvania, also a detailed accounting of the moneys and property received by the defendant corporation up to July 2,

1928, and a decree ordering that the defendant corporation turn over to plaintiff all moneys, wampum, property and effects in defendant's custody and control on July 2, 1928.

No substantial issues of fact are raised by the pleadings. The averments of the bill and the admissions in the answer, coupled with the agreement of counsel of record, sufficiently establish all the material facts, namely:

## Findings of fact.

1. The defendant, Wingohocking Tribe No. 33, Improved Order of Red Men of Pennsylvania, is a corporation duly chartered under the laws of the State of Pennsylvania on Nov. 3, 1877.

2. The defendant corporation was formed and chartered to afford pecuniary relief to its members suffering from sickness and distress.

3. The value of the assets in the hands of the defendant corporation, as of July 2, 1928, was $24,838.65.

4. Section 5, article xxiv, of the by-laws of the Great Council provides that upon expulsion the expelled tribe shall thereupon deliver to the Great Sachem, or his nominee, the moneys, wampum, properties and effects of the said tribe.

5. The defendant tribe, having refused to pay the *per capita* tax due from it to the Great Council of the United States, was in contempt, and was legally suspended and expelled on July 2, 1928.

## Discussion.

The expulsion having been declared legal in all respects *(vide* Isoka Tribe *v.* Great Council of the Improved Order of Red Men, 98 Pa. Superior Ct. 390), defendant corporation is no longer a subordinate body of the Improved Order of Red Men, and retention of the name and ritual is, therefore, unjustified.

Agreement of counsel as to the assets of defendant corporation as of July 2, 1928, renders unnecessary the detailed accounting originally requested.

Hence, there remains to be disposed of but one vital question, viz., whether section 5, article xxiv, of the by-laws of the Great Council is of legal validity, and whether assent thereto, necessarily implied by each individual's subscription to the rules of the order, renders imperative the delivery to the Great Council of the accumulated funds of the expelled tribe.

As between the defendant corporation and its individual members, title was undoubtedly in the corporation. Even had the defendant been unincorporated, this would have been the case. "Ownership of any funds or property in form acquired or held by the association is vested in the members jointly; and by becoming a member, a person ordinarily acquires not a severable right to any of its funds or property, but merely a right to the joint use and enjoyment thereof so long as he continues to be a member:" 7 Corpus Juris, 1106. That the legal title to the funds is in the defendant corporation is, therefore, sufficiently obvious. That the funds are charged with a trust in favor of the individual members for the payment of sick and funeral benefits is equally obvious and amply supported by the decision of our Supreme Court in Knights of the Golden Eagle *v.* Taylor et al., 278 Pa. 9, 18: "The compact to which defendants subscribed upon becoming members of the Knights of the Golden Eagle stipulates certain benefits to be enjoyed and obligations to be assumed, one of which is, upon a dissolution of their subordinate association, to pass over all funds to the Grand Castle, so that body may continue in its own proper way to carry out the general trust on which such funds had theretofore been held. . . ." This general trust cannot be summarily discharged nor these vested rights defeated by a by-law. "It seems to be a general rule

that property belonging to a subordinate lodge or association does not upon revocation by the parent society become the property of the latter; and a provision to that effect, made by the supreme lodge or council, is void as a confiscation without judicial process of property owned by the subordinate body," 15 L. R. A. (N. S.) 336, citing Austin v. Searing, 16 N. Y. 112; Wicks v. Monihan, 130 N. Y. 232; Wells v. Monihan, 129 N. Y. 161. This general rule has been upheld in Pennsylvania in Wolfe v. Limestone Council, 233 Pa. 357, and State Council v. Emery, 219 Pa. 461, 466. The latter case quotes with approval the language of the court in Goodman v. Jedidjah Lodge, 67 Md. 117, 127: "Whatever powers the higher lodges in such an organization as this may have to make rules or laws for the government of the subordinate lodges and the discipline of their members, we think it quite certain that the courts can never recognize as valid any rule or law so made, the effect of which is to confiscate property, or arbitrarily to take away property rights from one set of members and give them to another set." Paragraph 23 of the bill in the instant case definitely announces an intention, in accordance with a by-law, to bestow upon a tribe later to be constituted, the property of the defendant corporation. If this by-law contemplates the transfer of the fund discharged of the trusts already imposed upon it, the by-law is undoubtedly void as a confiscation of vested rights without judicial process.

On the other hand, the courts in this and other jurisdictions have uniformly recognized the necessity of maintaining discipline and the consequent right of "the higher lodges . . . to make rules or laws for the government of the subordinate lodges and the discipline of their members:" Goodman v. Jedidjah Lodge, supra. In the case before us, the funds in dispute have not been contributed exclusively by the present members, but represent a process of accumulation extending over a long period of time, possibly since Nov. 3, 1877. If, whenever a similar fund became large enough to suggest its division among the living members (who had perhaps contributed relatively little to its accumulation), the lodge could then sever itself, voluntarily or by inviting expulsion, it is probable that only the poorer lodges would long remain loyal. The provision that upon dissolution these long-accumulated funds be turned over to the superior body is designed to forestall just such a situation. Such a provision, unless confiscatory of vested rights, would seem within the disciplinary powers of the parent body. In holding the legal title to the fund, subject to the general trust imposed thereon, the subordinate body is exercising a stewardship. The transfer of the legal title, as directed in the by-laws, to which all members of the order necessarily subscribed, merely involves a change of trustee without disturbing the rights of the individual members. These members having no severable rights in the fund, but only a right to its employment for the payment of sick and funeral benefits, suffer no legal injury in such a transfer. Should the Great Council fail to recognize the vested rights of the individual members, they have at their command adequate legal remedies for the enforcement of the trust.

### Conclusions of law.

1. Defendants have no present right to the use of the name or the ritual of the Improved Order of Red Men.
2. The legal title, at the time of expulsion, to the funds in dispute was in the defendant corporation.
3. The funds referred to in the preceding paragraph are charged with a trust for the payment of sick and funeral benefits to the individual members of the defendant corporation.

4. The provisions of section 5, article XXIV, of the by-laws of the parent body are valid in so far as they relate to a transfer of the stewardship of the fund from the subordinate body to the Great Council, but such transfer of title in no way discharges the trust already imposed.

5. A decree must be made restraining defendants from the use of the name or ritual of the Improved Order of Red Men, and ordering the transfer of title to the fund to the plaintiff, subject, however, to the trust imposed thereon.

Hence, we make the following

### Decree nisi.

And now, to wit, Dec. 3, 1930, it is hereby ordered, adjudged and decreed that:

1. The defendants be, and they are, restrained and enjoined from in any way making use of the name or ritual of the Improved Order of Red Men.

2. That the defendant corporation deliver to the plaintiff, Great Council of Pennsylvania of the Improved Order of Red Men, the funds in defendant's possession as of July 2, 1928, to wit, $24,838.65, with income subsequently accrued, defendant to make all conveyances requisite to said transfer.

3. The costs of this proceeding to be paid out of the fund in dispute.

The prothonotary will enter this decree nisi and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, the decree nisi shall be entered as the final decree by the prothonotary.