1810.

*Philadelphia,
Saturday,*
March 31.

The Commonwealth *against* The President and Members of the St. Patrick Benevolent Society.

THIS cause came on upon the return to a mandamus, to restore *John Binns* to his standing as a member of the St. Patrick Benevolent Society.

The president of the society returned—That the said society is a charitable institution, being associated for the purpose of raising a fund sufficient to supply its members in certain exigencies, and for the relief of distressed *Irishmen* emigrating to the *United States.* That it is a corporation or body politic in law, being so made and constituted according to the laws of this commonwealth, on the 5th of *September* 1804. That the said corporation is authorized and empowered *to make rules, by-laws, and ordinances, and to do every thing needful for the good government and support of the said corporation,* provided that the said by-laws, rules and ordinances, or any of them, be not repugnant to the constitution and laws of the *United States,* to the constitution and laws of this commonwealth, *or to the instrument of incorporation.*

He further certified and returned—That a *certain by-law of the said corporation was duly and legally made and passed, by which it was enacted, ordained and established, that "* VILIFYING ANY OF ITS MEMBERS," *is a crime against the said society; and it was further directed and ordained by the said by-law, that the punishment for such crime shall be removal from office, fine,* OR EXPULSION, subject to the proviso at the end of the eleventh article of the constitution, that notice shall be given in the time and manner therein prescribed.

He further certified and returned—That the said proviso of the 11th article of the constitution, requires and declares, that no member shall be expelled the society *for any crime whatever,* without first giving him seven days' notice in writing, which shall be exclusive of the day of meeting, specifying the nature of the crime of which he is accused, together with the name of his accuser, and requiring him to attend

*Marginal note:* Without an express power in the charter, a corporator cannot be disfranchised, unless he has been guilty of some offence, which either affects the interests or good government of the corporation, or is indictable by the law of the land; and therefore a by-law to expel a member for *vilifying* any of the members of the corporation, is void.

1810.

COMMON-
WEALTH
*v.*
ST. PATRICK
BENEVOLENT
SOCIETY.

the next meeting of the society, in order that he may have an opportunity of defending himself thereon.

Then the return alleged—That after the society was incorporated as aforesaid, *John Binns* was duly elected and admitted a member of the said St. Patrick Benevolent Society, and subscribed the constitution thereof; and became liable to obey and conform himself to the said constitution, and to all the rules, by-laws, and ordinances duly and legally made and enacted &c.

The return proceeded to state—That the following charges were made against the said *John Binns*, by *William Duane*, a member of the St. Patrick Benevolent Society, to wit,

William Duane a member of the St. Patrick Benevolent Society, charges *John Binns*, a member of the said society, with the following offences against the laws of the society.

1. In falsely and scandalously vilifying the said *William Duane*, on matters which, besides having no foundation in any shape in truth, had no relation to *American* politics, but might greatly tend to excite injurious doubts, scandals and suspicions, of persons whose names were united with the unhappy destinies of *Ireland*.

2. With introducing to public observation the name of a lady whose husband perished in the *Irish* cause, and falsely, scandalously and without any shadow of foundation, insinuating, that the said *William Duane* had been guilty of indelicate or ungenerous conduct to that lady and her son.

3. With violating his obligation to the society in the above base and unfounded conduct towards the said *William Duane*.

The return then certified—That the said *John Binns* was duly notified of the said charges in writing, together with the name of his accuser, in all respects according to the directions of the abovementioned proviso of the 11th article of the constitution of the said society. And that afterwards, to wit on the 17th day of *November* 1807, at a regular and legal meeting of the St. Patrick Benevolent Society, duly called and convened, the said *John Binns* having been duly notified as aforesaid of the said charges, so as aforesaid made against

1810.

COMMON-
WEALTH
*v.*

ST. PATRICK
BENEVOLENT
SOCIETY.

him, did attend; and the members of the said society, at their said meeting on the said 17th day of *November,* did then duly hear all which was alleged or offered by or on behalf of the said *John Binns,* in answer to the charges so as aforesaid made and exhibited against him. And *all and singular the premises* having been duly weighed and considered at and by the said meeting, it was duly resolved that the said *John Binns* be no longer continued a member of the said society, and that he be expelled from the same. And *for these reasons and causes,* I the president of the said St. Patrick Benevolent Society, and the members of the said society, in the writ hereunto annexed mentioned, ought not, nor can we restore the said *John Binns* to his standing as a member of the said St. Patrick Benevolent Society.

*Browne* for the prosecutor, objected to the sufficiency of this return, upon the ground, that the by-law under which the expulsion took place, was void; and this he said arose, 1st, from its being contrary to the act of the 6th of *April* 1791, 3 *St. Laws* 40, under which the society was incorporated; 2dly, from its being contrary to the charter in many respects; and 3dly, from its making that which was no offence at law, a sufficient offence to amove a corporator.

1st. It is contrary to the act of assembly. The corporation has no legal existence, except for a charitable, religious, or literary purpose. It is obviously charitable. By the 8th article of the charter, each member on signing the constitution pays a sum annually fixed by the society, and at every stated meeting such further sum as may be required by a by-law; and the fund, thus raised, is exclusively applied to the subsistence of members incapable of following their daily employment. To be a valid by-law, it must consist with the object of the incorporation, as sanctioned by the act of assembly. It must assist the charitable design, or, which is the same thing, it must protect the society in the prosecution of its charitable design. But this by-law is merely political. It is to prevent animadversions on each other's conduct, out of doors, and therefore has nothing to do with the charity.

2dly. It is contrary to the charter. The causes of disfranchisement are fixed by the incorporation. The first cause consists, by the 11th article, in neglecting for seven days to inform of the removal of any disability, for which the mem-

1810.

COMMON-
WEALTH
v.
ST. PATRICK
BENEVOLENT
SOCIETY.

ber has received assistance. The second, by the 13th article consists in quarrelling, drunkenness, insulting or disrespectful behaviour to any of the society &c. while the society is sitting; for which, if a first offence he is to be fined one dollar, if a second two dollars, and for the third he is to be expelled. Here are the causes agreed upon. They exclude all others; and if an extension of the power to expel is wanted, it must be obtained like any other alteration, under the second section of the act. But the by-law not only exceeds, it directly impugns the charter. For insulting or disrespectful behaviour to any of the society, during its sittings, the member is by the 13th article, to be fined for the first offence, and to be expelled only for the third; whereas for vilifying a member, which is the same thing, the by-law expels him in the first instance; that is, by the charter he must repeat a particular offence three times in the presence of the society, before he can be expelled, and by the by-law he may be expelled for committing it once, any where. Here is a manifest repugnance. It is however plainly against the charter, in a third respect. The second article authorises only such by-laws as are needful for the good government and support of the affairs of the corporation. This power implies a negative, that they shall not make by-laws in other cases. *Child* v. *Hudson's Bay Company* (a), *The King* v. *Cutbush* (b). The by-law has no relation whatever to the good government or support of the affairs of the corporation. It controls the external conduct of members to each other, and might by the same principle regulate their behaviour to the rest of the world.

3dly. The causes for which a corporator may be amoved, are *first* such as have no immediate relation to his office, but are of so infamous a nature, as to render the offender unfit to execute any public franchise; *secondly* such as are against his duty as a corporator; *thirdly* such as are of a mixt nature, against his duty, and also indictable. *Rex* v. *Richardson* (c). The by-law does not amove for causes of the second kind; if it embraces any, it does the first. But it cannot be defended upon this ground for two reasons. Vilifying a member is neither an infamous nor an indictable offence; and if it were,

(a) 2 *P. Wms.* 207.    (b) 4 *Burr.* 2204.    (c) 1 *Burr.* 538.-

it is no cause of amotion until conviction of the offender, whereas the by-law provides for a trial by the corporation. If the offence of a member is indictable, there should be a conviction; if not, it is no cause of amotion. *Bagg's case* (*a*). Writing a libellous letter to a member, is no cause before conviction. *The Queen* v. *Lane* (*b*). A custom to disfranchise for contemptuous words spoken of an alderman is void; it is not against the corporator's duty, and it is no offence at law. *The Queen* v. *Rogers* (*c*), *Clerk's case* (*d*). The principle is distinctly stated in *sir Thomas Earle's case* (*e*), that a personal offence from one member to another, cannot be a cause of disfranchisement.

But whether the by-law is valid or not, the return is insufficient. It does not appear that the by-law was in existence at the time of the expulsion.

*Hopkinson* contrà. This is the case of a private charitable institution, and not of a town corporate; and what may be needful for the support and good government of the one, may of course be in no manner requisite for the other. The power to make by-laws is limited only by the necessities of the institution. Those necessities vary, as the character and objects of corporations vary; and therefore a by-law of no validity under one incorporation, may be valid under another. All corporations, moreover, possess inherently a power of amotion, for offences that do not involve the breach of a by-law; they also possess the power of amoving for the breach of a by-law; and the latter power may be exercised for a cause, which will not justify the exercise of the former, because the by-law may impose an obligation upon a corporator, which did not exist before. These distinctions explain the cases cited on behalf of the prosecutor. They are cases of municipal corporations, and turn upon the power of amoving for offences not involving the breach of a by-law.

The question as to the validity of this by-law lies in a narrow compass. The cause of amotion which it declares, comes under the second class of Lord *Mansfield's* enumeration, a breach of the corporator's duty. It prohibits one

(*a*) 11 *Co.* 93 *b.*     (*c*) 2 *Salk.* 426. 2 *Ld. Ray.* 777. *S. C.*     (*e*) *Carth.* 176.
(*b*) *Fortesc.* 275.     (*d*) *Cro. Jac.* 506.

1810.

COMMON-
WEALTH
v.
ST. PATRICK
BENEVOLENT
SOCIETY.

1810.

COMMON-
WEALTH
  v.
ST. PATRICK
BENEVOLENT
SOCIETY.

member from vilifying another; and the only point is, whether the society had a right to impose such a duty upon the corporators. If they had, they certainly might punish the breach of it by disfranchisement. 4 *Bl. Comm.* 484. They are authorised by the charter, to make by-laws, and to do every thing needful for the good government and support of the affairs of the corporation. The object of the society is to assist persons in distress. It is an association depending for its existence upon the admission of new members, and upon the contribution of such as voluntarily continue to be members. It has no external authority whatever. It can compel no one to become, or to remain a contributor; and the instant that personal abuse and vilification of the members are permitted, that instant the society decays. It lives by union and cooperation. Whatever destroys these, goes to the destruction of the corporation; and therefore a by-law punishing the members for vilification of each other, is needful to the good government and support of the affairs of the corporation. It does not contravene the act of assembly, because it aids the charity. The charity cannot subsist without it. As to its being of a political nature, this is mistaking a possible case under the by-law, for the by-law itself. But the charge against the prosecutor in this instance expressly negatives the suggestion.

Is it then repugnant to the charter? The general position, that if the charter specify certain causes of amotion, all others are excluded, is incorrect. No authority can be adduced to support it; and it would prevent amotion for even an infamous and indictable offence. Besides, the charter does not enumerate the causes of expulsion. It merely says that certain offences may be punished in that way, without using any negative words; and it contains an implication that other offences may be so punished, because the 11th article provides that no member shall be expelled for *any crime whatever*, without notice. I admit that if the offence mentioned in the by-law was the same as the offence in the charter, it could not be punished differently. But it is not. The 13th article is intended merely to preserve decorum during the sittings. The by-law goes deeper, and prevents vilification in public, which is more likely to destroy the corporation. At the same time it does not interfere with the intercourse

between members and strangers, because this in no manner affects the well being of the society.

Then as to the authorities. The case of *The Queen* v. *Lane* was an amotion under the general power for an offence at law, of which the party should no doubt have been previously convicted. A libel was not against the duty of the corporator at common law, and it had not been made a breach of duty by a by-law. That case also, as well as *The Queen* v. *Rogers, Clerk's case*, and the case of Sir *Thomas Earle*, was the case of a personal offence by one member to another of a town corporation, possessing civil power, and in no manner depending for either existence or success upon the voluntary cooperation of the corporators. Libel and vilification did not endanger these societies, nor had a by-law been passed by either of them, to restrain and punish such offences.

As to the insufficiency of the return, because the by-law is not stated to have been in existence at the time of the expulsion, the return certifies, that the prosecutor was expelled after weighing all and singular the premises, the by-law included.

TILGHMAN C. J. This case arises on a return to a mandamus directed to the St. Patrick Benevolent Society, an incorporated body, commanding them to restore *John Binns* to the rights of a member of the said society. The return is made by *William Duane* president of the society, and assigns the cause for not restoring *Binns*, according to the command of the writ. The question is, whether the by-law, under which the expulsion was made, is valid. In order to determine this, it will be necessary to consider the nature of the corporation. It is an association which has for its object, the raising a fund to be applied to the relief of its members in case of sickness and misfortune, and to the assistance of distressed *Irishmen*, emigrating to the *United States*. Each member pays a certain sum, on admittance to the society, and likewise an annual contribution; and each member is entitled, in case of sickness or distress occasioned by unavoidable accident, to pecuniary assistance from the funds of the society. The second article gives authority, " to make rules, by-laws and ordi-" nances, and do every thing needful for the good govern-" ment and support of the affairs of the corporation, provided

1810.

COMMON-
WEALTH
*v.*
ST. PATRICK
BENEVOLENT
SOCIETY.

1810.

COMMON-
WEALTH
*v.*
ST. PATRICK
BENEVOLENT
SOCIETY.

" that the said by-laws &c. be not repugnant to the constitu-
" tion and laws of the *United States*, to the constitution and
" laws of this commonwealth, or to the instrument of incor-
" poration." It may be proper to consider in the first place,
whether there existed any, and what power of expulsion,
independent of any positive provision in the charter or by-
laws. Every incorporation possesses inherently, the power
of expulsion in certain cases, because such power is necessary
to the good order and government of corporate bodies.——
There is a tacit condition annexed to the franchise of a mem-
ber, which, if he breaks, he may be disfranchised. The
cases in which this inherent power may be exercised, are of
three kinds.

1. When an offence is committed, which has no immediate
relation to a member's corporate duty, but is of so infamous
a nature, as renders him unfit for the society of honest men.
Such are the offences of perjury, forgery &c. But before an
expulsion is made for a cause of this kind, it is necessary
that there should be a previous conviction by a *jury*, accord-
ing to the law of the land.

2. When the offence is against his *duty as a corporator;*
and in that case he may be expelled on trial and conviction
by the corporation.

3. The third is an offence of a mixt nature, against the
member's duty as a corporator, and also indictable by the
law of the land.

The offence for which *Binns* was expelled, does not come
within either of these three descriptions. The expulsion
rests solely on the by-law. It has been contended, that this
by-law is void, because contrary to the charter in several
respects.——First, it is said, that the charter contains an ex-
press power of expulsion in certain cases, and thence it is
inferred, that such power can exist in no other case. But
this inference cannot be supported. It is not expressed
in the charter, that there shall be no expulsion except in
the specified cases, and in the nature of the thing it is per-
fectly consistent, that expulsion should take place in the
case provided for, and also in such other cases, as the good
government of the corporation might require.——In the next
place it was urged, that this by-law is contrary to the thir-
teenth article of the charter, by which it is provided, that in

order to preserve decorum in the society, while sitting, there shall be no insulting or disrespectful behaviour to any of the society; and any member so transgressing, shall for the first offence be fined in the sum of one dollar, for the second in double that sum, 'and for the third be expelled the society. A member may be vilified, says the counsel for *Binns*, by *insulting and disrespectfu behaviour;* and for that offence, committed in the face of the society, there can be no expulsion, unless repeated again and again. Yet the by-law inflicts the punishment of expulsion for the first offence. If the offences were exactly the same, the argument would be conclusive. And although not the same, the by-law would certainly have been more agreeable to the spirit of the charter, if instead of expulsion in the first instance, the offender had been only liable to a fine and reprimand. But I will not say that it is *void* for this objection. *Vilifying* is a term of very extensive import, and a man may be vilified in his absence, when of course, there can be no personal insult or disrespectful behaviour towards him. The case provided for in the charter, is, from its nature, confined to insulting and disrespectful behaviour in the presence of the party offended. My opinion will be founded on the great and single point, on which the cause turns. Is this by-law necessary for the good government and support of the affairs of the corporation? I cannot think that it is. I have considered the case, with a mind strongly disposed to give a liberal construction to the power of making by-laws. It is my wish to give all necessary powers for carrying into effect the benevolent purposes of this society, and many others which have lately been incorporated on similar principles. But these powers must not be constrained, or the societies, instead of being protected will be dissolved. The right of membership is valuable, and not to be taken away without an authority fairly derived either from the charter, or the nature of corporate bodies. Every man who becomes a member, looks to the charter; in that he puts his faith, and not in the uncertain will of a majority of the members. The offence of vilifying a member, or a private quarrel, is totally unconnected with the affairs of the society, and therefore its punishment cannot be necessary for the good government of the corporation. So far from it, that it appears to me, that

1810.

COMMON-
WEALTH
*v.*
ST. PATRICK
BENEVOLENT
SOCIETY.

1810.

COMMON-
WEALTH
v.
ST. PATRICK
BENEVOLENT
SOCIETY.

taking cognisance of such offences, will have the pernicious effect of introducing private feuds into the bosom of the society, and interrupting the transaction of business. I consider it as a point of very great importance, in which thousands of persons are, or very soon will be interested; for the members of these corporations are increasing rapidly and daily. On mature reflection it appears to me, that without an express power in the charter, no man can be disfranchised, unless he has been guilty of some offence, which either affects the interests or good government of the corporation, or is indictable by the law of the land. I am therefore of opinion, that the cause returned by the president of the St. Patrick Benevolent Society, for not restoring *John Binns* to the rights of a member, is insufficient, and that a peremptory *mandamus* should issue.

YEATES J. and BRACKENRIDGE J. concurred.

Rule for a peremptory *mandamus*.