THE PEOPLE, Etc., ex rel. JAMES H. PINCKNEY and THE RELIEF FIRE INSURANCE COMPANY OF THE CITY OF NEW YORK, Appellants, v. THE NEW YORK BOARD OF FIRE UNDERWRITERS, Respondent.

*Corporate body — member of, when may be expelled.*

Where a corporation is formed for the purpose of establishing uniformity in the insurance policies and contracts of its members, it is a tacit condition of membership, that a member will not oppose or injure the interests of the corporate body; and, if he breaks this condition — e. g. by insuring for smaller amounts than those established by the corporation — he may be expelled, on trial and conviction by the corporation.

Appeal by the relators from an order made at Special Term, denying a motion for a mandamus compelling the defendants to restore the relators to membership in their board.

*John E. Parsons*, for the appellants. The power to make by-laws must be exercised reasonably, with sound discretion, and

strictly within the limits of the charter, and in perfect subordina-
tion to the Constitution and the rights dependent thereon.
(2 Kent's Com., 296; Ang. & Ames, § 347 and cases; *Common-
wealth* v. *St. Patrick's Society*, 2 Binn., 441; *The People ex rel.
Thatcher* v. *New York Com. Ass.*, 18 Abb., 271; Ang. on Corp.,
§§ 349, 350; 2 Kent, 297, 299; see Grant on Cor., 264; *People
ex rel. Gray* v. *The Medical Society of Erie*, 24 Barb., 571; Ang.
& Ames, 268; 2 Kent, 296; Grant on Cor., 76.) Disfranchise-
ment is defined to be the taking a franchise from a man for some
reasonable cause. (Grant on Cor., 263.) A regulation must be:
1. Authorized.    2. Reasonable.    3. In accordance with public
policy and the law.    The power of making by-laws must be exer-
cised with discretion, hence by-laws must be reasonable.    (*Gosling*
v. *Veley*, 12 Q. B., 347.) The defendants are not a mere voluntary
company, or a benevolent or religious society of the kind with which
disfranchisement is possible, and there was no right of expul-
sion by the action of the corporation at all.    (Ang. & Ames, § 362
and cases cited; id., § 419; 2 Kent, 298.) A rule or regulation
preventing competition in rates is illegal, as being in restraint of
trade, and having for its object to prevent competition.    This is a
matter that concerns public policy.    (*Hooker* v. *Vandewater*, 4
Denio, 349; *Stanton* v. *Allen*, 5 id., 434.)

*William Allen Butler*, for the respondents.    A regulation may
be good as an agreement, though bad as a by-law.    (See Angel,
§ 342, and Ames on Cor., 9th ed.; *Davis* v. *Proprietors of Meet-
ing House*, 8 Met., 321; *Addy* v. *Whistable Co.*, 17 Ves., 323.)
It is always cause for the amotion of a corporator if he violates his
duty to the society as a member of the corporation.    (*The King* v.
*The Mayor of Liverpool*, 2 Burr., 732, cited in *People* v. *Medical
Society of Erie*, 32 N. Y., 194.) And the question is always whether
the violation is against a regulation within the scope of the corpo-
rate powers of the company.    (See *People* v. *N. Y. Com. Ass.*,
18 Abb., 271.)

Daniels, J.:

The relator James H. Pinckney, as president of the Relief Fire
Insurance Company, was an incorporator in the corporation named

the New York Board of Fire Underwriters, incorporated by chapter 846 of the Laws of 1867. Its purposes were declared to be " to inculcate just and equitable principles in the business of insurance ; to establish and maintain uniformity among its members in policies or contracts of insurance, and acquire, preserve and disseminate valuable information relative to the business in which they are engaged." (Vol. 2, Laws of 1867, § 2.) And power was conferred upon it " to make all needful by-laws not contrary to the provisions of the act, or the Constitution and laws of this State or of the United States." (Id., § 6.) A by-law was adopted providing that the board might establish or alter rates of premiums for insurance by a majority of its members at any regular meeting, or one especially called for that purpose, and that such rates should be binding on all the members. The Relief Fire Insurance Company subscribed the charter and by-laws, and agreed to be governed by, and to maintain all the rates, rules and regulations adopted by the board. The board adopted and prescribed rates which should be charged and received by its members as premiums for insurance upon property. And the relators afterwards violated those rates by insuring two steamers for smaller amounts than those which had been established by the board. For that, after an investigation of the charge, the Relief Fire Insurance Company was expelled from its membership in the board.

The defendant owned no other property than that allowed to be acquired for the purposes of its incorporation ; and that amounted to the sum of about $50,000. It issued no stock, but was empowered to assess upon the organizations and agencies of which its membership consisted, not to exceed two per centum of the aggregate premiums returned by them as received, such sums as should be necessary to defray its expenses, and to sustain a fire patrol, if that should be provided. It was also permitted to take and hold real and personal property, to an amount not exceeding $100,000, for the purposes of the corporation ; and they were regulating and managing the business of insurance carried on by such organizations and agencies. The members owned none of the property acquired, and no earnings were to be made in which they could in any form participate. But the assessments collected were designed to pay the expenses to which the corporation

should be subjected in the conduct and management of its affairs, and the acquisition of real and personal property required for such purposes. It was in no sense whatever a trading corporation ; and no part of the assessments paid or collected was afterward to be returned to the organizations or agencies from which they should be received. For those reasons it was not a corporation from which its members could not be expelled, because they were entitled to proprietary interests in its capital or earnings. There were no such interests belonging to any of its members, and their membership could not be absolutely maintained on account of them. It was merely an organization formed for promoting the proper transaction and management of the business of insurance, by its members, in a uniform manner. And its usefulness and success depended, in a very great measure, upon their faithful observance of its rules and regulations. That, under the charter, was an implied condition of membership, for the organization could be no otherwise maintained. And, for that reason, the corporation necessarily possessed the power of expulsion over members violating their obligations in that respect. It could not exist without it. If they could violate the rules and by-laws lawfully made by it, and still insist upon their membership, the object for which the corporation was formed would be at once defeated. For it could not, under such a state of affairs, establish any thing like uniformity in the business of its members. It has been said to be a tacit condition, annexed to the franchise of a member, that he will not oppose or injure the interests of the corporate body, and, " consequently, if he breaks this condition he may be disfranchised." (Ang. & Ames on Cor. [4th ed.], § 411 ; *Com.* v. *St. Patrick's Society*, 2 Binn., 448.) In that case it was held that when the offense of a member is against his duty as a corporator, he may be expelled on trial and conviction by the corporation. (*Rex* v. *Liverpool*, 2 Burr., 723.) And none could very well be more so, than a practical nullification of the lawful by-laws of a corporation by a refusal to observe them. If that should be tolerated, the object to be secured by the incorporation must necessarily, in the end, be subverted.

One of the leading purposes expected to be accomplished by the existence of the defendant was uniformity in the insurance poli

cies or contracts of its members, not in some particulars merely, but in all substantial respects. They could not otherwise, in any just or proper sense, be uniform. And, as the amount of premiums to be charged was an important feature of both the business and the policy, uniformity could only be secured by declaring their rates. The provision contained in the statute is without exception, in this respect. Whatever was necessary to secure uniformity could be established by the defendant, under the power which was given to it over the business of its members. Contracts of insurance at different rates upon the same description of property would not be uniform. The policies would not be alike, even though the risks assumed by them were the same. And their existence would not be consistent with the uniformity the defendant was authorized to require in the contracts of its members. That was designed to be complete in all substantial respects, and it could only be made so by the contracts being entered into for the same consideration where the risks were precisely alike.

The by-laws were adopted to secure that end, and they were reasonable for that purpose. They were lawfully enacted, because they were necessary for the promotion of the success of the organization. And they contained nothing which was in conflict with the charter, or the laws or Constitution of the State or the United States. And those were the only restraints imposed upon their enactment.

The proceeding taken for the expulsion of the relators was not complained of for want of notice of the hearing to them, but it was assailed for want of power, under the act of incorporation, to expel the relator company from membership for the cause alleged against it, or any other cause of which it had been guilty. And that objection, as it has been already shown, cannot be maintained. The fact that both the relators were heard upon the complaint made, charging the violation of the by-law, appears by the defendant's proof. For, in the affidavit produced to oppose the motion, it was stated that the said company, of which the other relator was president, insisted and claimed that it had the right to insure vessels at the rate at which it had insured them. This shows its presence at the hearing by the intervention of its officers, and the objection was in the nature of a demurrer to the sufficiency of

the charge made. And, as the facts were ascertained to be true, the result of expulsion legally followed. After appearing and making the objection taken, the want of notice could not be made the subject of complaint against the proceedings, even if none had been given. (Ang. & Ames on Cor. [3d ed.], § 421.) The only object of notice is to afford the party proceeded against the opportunity of making a defense, and that, it is evident from the proceedings, was secured in this instance.

The relators are entitled to no change in the order appealed from, and it should, therefore, be affirmed, with the usual costs.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with costs.