(52 App. Div. 170.)

PEOPLE ex rel. COFFEY v. DEMOCRATIC GENERAL COMMITTEE OF KINGS COUNTY.

(Supreme Court, Appellate Division, Second Department. June 5, 1900.)

1. ELECTIONS—COUNTY COMMITTEE—EXPULSION FROM MEMBERSHIP—POWER OF COMMITTEE.

Laws 1899, c. 473 (Primary Election Law), provides that the general county committee of each political party shall consist of one delegate from each election district, to be elected by the electors of such political party in such district. It further provides that such committee shall adopt rules and regulations not inconsistent with the provisions of the chapter, and that the rules may prescribe the amount of annual dues which shall be paid by members, and may contain a provision precluding any member who may fail to comply therewith from participating in the meetings of such committee. Held, that the general county committee have power to enact and enforce rules and regulations providing for the expulsion from its membership of one duly elected thereto by the party electors of an election district, when it is shown that he is hostile to the interests of the party; he first having an opportunity to be heard and to refute the charge.

2. SAME—REMOVAL OF COMMITTEEMAN—NOTICE.

A member of the general county committee of a political party, who appeared before the committee in person and by counsel in proceedings to expel him from membership therein, and who subsequently refused to

participate in such proceedings, cannot claim that he was expelled without notice.

3. MANDAMUS—PLEADING—ISSUES OF LAW—ISSUES OF FACT.

Code Civ. Proc. § 2070, provides that a peremptory writ of mandamus may be issued in the first instance where the applicant's right depends only on questions of law, and that when applicant's right depends on a question of fact an alternative writ must first be issued. An application for a writ of mandamus to compel relator's restoration to membership on a general county committee alleged that relator's expulsion was wholly illegal and void, and that the committee was without power or authority to expel him. Respondent alleged in its opposing affidavit that it deposed relator for doing certain things enumerated, which, it alleged, constituted a violation of the rules and regulations which it had duly enacted. *Held* not to present facts whereon the court would be authorized to issue a peremptory mandamus, since the petition stated conclusions of law, and not facts; nor does it present a case for an alternative writ, since neither the complaint nor the answer set out the rules and regulations which it is claimed were violated, and hence no issue of fact was raised.

Appeal from special term, Kings county.

Application by the state of New York, on the relation of Michael J. Coffey, for a writ of mandamus against the Democratic general committee of Kings county to compel them to restore relator to membership in the respondent. From an order granting a peremptory writ (65 N. Y. Supp. 418), respondent appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

Charles J. Patterson (Henry J. Furlong, on the brief), for appellant.
Isaac M. Kapper (Luke D. Stapleton, on the brief), for respondent.

GOODRICH, P. J. The petition alleges that the relator for many years has been a voter in the Ninth assembly district of the county of Kings; that the respondent committee is the general committee of the Democratic party in and for the county of Kings, created pursuant to the primary election law (chapter 473 of the Laws of 1899), and that the unit of representation authorized by that act, "and as laid down by the rules and regulations of said general committee, is the assembly district, and that from each of the assembly districts in said Kings county, as such unit, are elected, pursuant to law, the members of said general committee"; that on September 19, 1899, at the primary election held before the general election in that year, the relator was duly elected a member of the committee by the duly enrolled Democratic electors of said Ninth assembly district; that at the same time all the other members of the committee were elected; that on December 5, 1899, the committee held its first meeting for the purpose of organizing (that date being fixed for the purpose by the rules of the general committee), and organized and elected its officers, and "adopted rules and regulations containing a provision which was duly authorized by the said primary election law," prescribing that the dues of each member should be $15 per annum, which sum the relator paid; that thereupon the relator became and was duly entitled to all the rights and privileges of a duly elected and qualified member of said Democratic general committee of Kings county, for the term of one year; "that on the 23d day of March, 1900, the said Democratic general committee of Kings coun-

ty held a meeting and adopted a resolution expelling your petitioner from his said office of member of said general committee, whereupon your petitioner's name, without his consent, and against his protest, was stricken from the roll of membership of said general committee, and thereupon and thenceforth your petitioner became and stood deprived of his said office of member of said general committee, to which he was duly elected as aforesaid, and debarred from exercising the rights and privileges pertaining to said office; that the aforesaid expulsion of your petitioner was and is wholly illegal and void; that said general committee was and is wholly without power or authority to expel your petitioner, or to deprive or debar him from exercising said office, and all the rights and privileges thereto belonging or appertaining." Upon such petition the relator applied for a peremptory writ of mandamus, commanding the committee "to forthwith restore the name of the above relator to the roll of membership in said general committee, and the said relator to his office of member of said general committee, from which he was illegally expelled on March 23, 1900, and from which said office he was illegally and without power deprived on said March 23, 1900." The committee presented affidavits denying that the expulsion was illegal, void, or without power or authority, and alleging that a complaint signed by a large number of Democratic electors of the Ninth assembly district was presented to the general committee, preferring charges against the relator; that he was "guilty of acts of open hostility to the Democratic party in the county of Kings, and to the Democratic general county committee of said county, and that the said relator had been guilty of such acts of hostility during the elections held in November, 1899, and also that the said relator had, with others, conspired together to defeat the regular nominees of the said Democratic party"; that thereupon the complaint was referred to the executive committee, which appointed a committee of five of the members of the general county committee to investigate the charges and take testimony thereon; that the charges were served upon the relator, who appeared before the committee, with counsel, in January, 1900; that witnesses in support of the charges were examined and cross-examined, several adjournments taken, finally to March 10th, in order to enable the relator to proceed with his defense, at which time the relator failed to appear or offer any defense, and the investigation was closed; that the evidence proved that the relator "had conspired wrongfully to defeat the nominees of the Democratic party at said election, in violation of his duty and contrary to his obligations as an officer of the Regular Democracy of the county of Kings, under the rules and regulations of said Democratic general committee, duly adopted and filed with the custodian of primary record; that the committee filed its report with the executive committee, "that the relator had been guilty of hostility and disloyalty to the Democratic party at the said general election of 1899, that he had been guilty of open hostility to the county general committee, and that he had entered into a conspiracy to defeat the regularly nominated candidates of the Democratic party at said election, and was the ringleader of the aforesaid hostility and disloyalty, and recommended the disbanding of the hostile Ninth assembly district committee, the forma-

tion of a new assembly district committee, the expulsion of the re-
lator, and the censure of those who had acted under the dictates of the
said relator in the said wrongful conduct"; that this report and recom-
mendation were duly adopted by the general committee at a regular
meeting, and that "the said relator was duly expelled from the counsels
[sic] of the Democratic party in the county of Kings, for good and
sufficient cause, in that he had violated and failed to comply with the
rules and regulations of said committee, duly adopted as aforesaid";
that the relator was present, with counsel, at the meeting of the exec-
utive committee and the subsequent meeting of the county general
committee, and was afforded full opportunity to be heard; "that the
·rules and regulations of the government of the Democratic organiza-
tion in the county of Kings lawfully contain, either in express words or
by necessary implication, pursuant to chapter 473 of the Laws of 1899
(being the primary election law of the state of New York), full power
and authority in the county general committee of the county of Kings
for the expulsion of a hostile member, and that such power has been
duly exercised after a fair and open trial of the accused, and after the
relator had been given every possible opportunity to refute the charges
and proofs adduced against him, and that the said relator has been
found guilty, and has been in good faith duly expelled, all in accord-
ance with the rules and regulations of the Democratic organization,
and pursuant to the provisions of the primary law of the state of New
York; that all proceedings heretofore mentioned as had against the
relator were had and conducted in strict conformity to the rules and
regulations of the general committee of the Democratic party of Kings
county; that, according to the true intent and meaning of the said
rules and regulations, the misconduct with which the said relator,
Michael J. Coffey, was charged as aforesaid, did constitute a violation
of, and failure to comply with, said rules and regulations, and for the
same the said Democratic general committee was duly authorized and
empowered by said rules and regulations to expel the relator in the
manner in which the same was done as aforesaid; that the rules and
regulations aforesaid were duly adopted by the said general committee
at the meeting at which they organized, and transcripts thereof were
duly filed within three days thereafter with the custodian of primary
record, as required by law." At the hearing of the motion the court
made an order granting the peremptory writ prayed for, and from such
order this appeal is taken.

It is matter of common knowledge that for many years the ma-
chinery of both the great political parties has embraced national, state,
county, and ward committees; each, in the order of its rank, directing.
the holding of conventions for the nomination of candidates for office,
and the holding of primaries for the election of delegates to itself and
to conventions. Formerly the general committee of the county was
the executive body by whose immediate order primary elections were
held in Kings county. It designated the day for the holding of conven-
tions, decided upon the number of delegates to be elected to such con-
ventions, and fixed the day of the primary. So, also, it provided for
the number and qualifications of delegates to be elected to itself, and
for the method of their election. The ward association was the unit

from which, and by the members of which, delegates were elected to the general committee.    Later the election district was made the unit by which delegates to the general committee were to be elected.    Thus far, historically considered, the general and ward committees were voluntary associations.

The first legislation on the subject of frauds at primaries and political conventions which I have been able to find is chapter 783 of the Laws of 1866, which declared certain acts of bribery, menace, or corruption in connection with primaries to be misdemeanors.    Other and similar legislation followed, such as the Chapin act (chapter 154, Laws 1882), and the election laws (Chapter 680, Laws 1892, and chapter 909, Laws 1896).    Primaries and political conventions were distinctly recognized and regulated, and restrictions thrown about them analogous to those provided for general elections.    But still more careful legislation followed, and primaries became the subject of separate acts. In 1898 an act was passed in relation to enrollment of voters, and the regulation of political parties and primary conventions (chapter 179, Laws 1898); and in 1899 that act was amended by chapter 473, Laws 1899.    The short title of this act is, "Primary Election Law."    These acts entirely altered the character of the primary election, and dignified it as a public function.    They changed the character of the general committee from that of a voluntary association to that of a public and statutory body, and recognized the equal importance of primary and general elections.    The scheme of the primary election law of 1899, briefly stated, is that there shall be an enrollment of primary electors under the control of an officer termed "Custodian of Primary Records," who is required to prepare primary election blanks and enrollment blanks, containing, among other things, the statement that any person desiring to enroll as a primary elector shall declare that he is a qualified voter of the election district in which he is registered, and "that I am in general sympathy with the principles of the party which I have designated by my mark hereunder; that it is my intention to support generally at the next general election, state or national, the nominees of such party for state or national officers."    The primary electors thus constituted are authorized to vote for members of the general committee.    Each party is required to have a general committee. "They [the committee] may proceed to make and adopt rules and regulations, but unless so adopted, the rules or regulations adopted by the last preceding county or general committee of said party in said county shall remain in full force and effect until repealed or amended in accordance with the provisions of this act."    Section 9, subd. 2, reads as follows:

"The rules and regulations of parties, and of the conventions and committees thereof, shall not be contrary to, or inconsistent with, the provisions of this act, or of any other law, and shall not be amended except upon reasonable notice.    Every political committee shall, within three days after its organization, file with the proper custodian of primary records a certificate specifying the names and addresses of its chairman and secretary, and shall within the same period of time after its adoption file with said custodian a transcript of every rule and regulation of said party in said county and of every amendment thereof duly certified in like manner.    The rules and regulations of a party may prescribe the amount of annual dues to be paid by each member of such committee to such committee, for the purpose of defraying

the expenses thereof, and may contain a provision precluding any member who may fail to comply therewith, from participating in the meeting of such committee."

The blanks for registration and the ballots for election are provided at the public expense. Section 5 provides that there shall be for each primary district two boards of primary inspectors, consisting of the general election inspectors of the two parties casting the highest number of votes for governor at the last preceding general election, and these officers must qualify by oath, and are paid for their services out of the public treasury.

In the Democratic party the unit of representation to the general committee is the assembly district. It is alleged in the petition, and conceded in the answering affidavits, that the relator was duly elected a member of the general committee of that party from the Ninth assembly district of the county of Kings. His contention is that, being thus elected in pursuance of the statute, there is no power in the general committee to expel him for any cause whatever, and that the committee is without power to adopt and enforce a rule or regulation impairing his right of membership, except for nonpayment of dues, as provided in section 9, subd. 2, already cited. This contention is based upon the use of the word "therewith," which, he contends, relates solely to the provision for the payment of the annual dues, while the committee contends that the word relates to all the rules and regulations of the committee. We are of the opinion that the word "therewith" relates to all the rules and regulations adopted by the committee, and not alone to the sentence in reference to the payment of dues. If the relator is correct in his contention, a delegate may enter the committee with the avowed intention of acting in open hostility to the purposes for which the committee is organized, of opposing its state and national candidates at the general election, and of defeating the very purposes of its organization. We must not lose sight of the fact that the statute recognizes the general committee as the instrument for conducting, supervising, and carrying out the plans and purposes of its party, and the election of its candidates for office. To sanction the contention of the relator would be virtually to defeat the objects for which the committee is created. We cannot assent to such a proposition. There is power inherent in every body of this character, aside from statute, to make rules essential for its own protection and existence; and the statute in question confirms the exercise of such power, in providing for the making of rules and regulations. These rules are to be deposited with the custodian of primary records, and are to be open to public scrutiny. We may assume that they are known to every candidate for election to the general committee, and that a candidate presents himself and is voted for in pursuance of such rules and regulations. To hold otherwise would defeat the plain purpose of primary elections, which, in the last analysis, are the fountain and source of political power and government. In fact, there are some districts where the preponderance of voters in one party over those in the other is so great that the nomination of a suitable candidate at the primary is practically tantamount to success at the general election. There is no analogy between an elective office in a public body, like

a common council, and that claimed by the relator. The offices are radically different. The holder of the former is elected to represent his constituency in a deliberative and executive body, and he has the right of voting therein upon questions coming before it as his judgment and conscience may dictate. But even in such a case it may be questioned whether there would not be an inherent power of self-protection, aside from any power conferred by statute, by which the body might expel a member who avowed that his intention was to destroy the functions and existence of the body itself. In People v. New York Board of Fire Underwriters, 7 Hun, 248, it was held that the defendant, a corporation, was merely an organization for promoting the proper transaction and management of the business of insurance by its members, and in a uniform manner; that its usefulness and success depended in great measure upon the faithful observance of its rules and regulations; that under the charter this was an implied condition of membership without which the organization could not be maintained, and for that reason the corporation necessarily possessed the power of expulsion over members violating their obligations in that respect. The court said (page 251):

"It could not exist without it. If they could violate the rules and by-laws lawfully made by it, and still insist upon their membership, the object for which the corporation was formed would be at once defeated; for it could not, under such a state of affairs, establish anything like uniformity in the business of its members. It has been said to be a tacit condition, annexed to the franchise of a member, that he will not oppose or injure the interests of the corporate body, and 'consequently if he breaks this condition he may be disfranchised.' In that case it was held that, when the offense of a member is against his duty as a corporator, he may be expelled on trial and conviction by the corporation. Rex v. Mayor, etc., of Town of Liverpool, 2 Burrow, 723. And none could very well be more so than a practical nullification of the lawful by-laws of a corporation by a refusal to observe them. If that should be tolerated the object to be secured by the incorporation must necessarily, in the end, be subverted."

In Ang. & A. Corp. (11th Ed.) § 411, it is said:

"It would certainly seem to be a reasonable rule, with regard to the expulsion or removal of members of corporations generally, that, when a member disqualifies himself to assist in promoting the object and purposes of corporation, he forfeits his corporate franchise, and may thus justify a vote of expulsion. For example, if a member of a corporation created for the advancement of religion should conduct himself in such a manner as to counteract the efforts of the other members in effecting that object, the corporation might be authorized to disfranchise or expel him."

In Com. v. President, etc., of St. Patrick Benevolent Soc., 2 Bin. 441, Tilghman, C. J., said (page 448):

"There is a tacit condition annexed to the franchise of a member, which, if he breaks, he may be disfranchised. The cases in which this inherent power may be exercised are of three kinds: * * * (2) When the offense is against his duty as a corporator; and in that case he may be expelled on trial and conviction by the corporation."

While the cases to which reference has been made related to corporations, we can see no difference between a corporation and a body like the respondent, created by virtue of public statute of the legislature. Certainly the committee is a quasi corporation.

It may be said, also, that as the relator had notice of the charges

against him, and appeared before the executive committee in person and by counsel, he cannot claim that he was expelled without notice because he subsequently refused to participate in the proceedings before that committee. His presence with counsel at the subsequent meeting of the general committee when the proceedings for expulsion were consummated gives emphasis to the fact of notice.

The case of McKane v. Adams, 123 N. Y. 609, 25 N. E. 1057, is not controlling of the case at bar. That was an action to compel the restoration of the plaintiff to the Democratic general committee in 1889, when the body was merely a voluntary political organization; and the court held that the fundamental error of the plaintiff's contention was that, because he had been elected to such a voluntary organization, he had acquired some property rights, or had become invested with some personal privileges, in the enjoyment of which, by his rejection at the hands of the committee, he had been disturbed. The court said that such a proposition had no support on any principle of law or ethics. The case at bar differs entirely from the McKane Case, because the primary election law has made the committee a statutory body, in which the persons elected thereto have legal rights and privileges, which may be the subject of an action or a proceeding to restore a member amoved to his rights in such body.

It is settled in People v. City of Brooklyn, 149 N. Y. 215, 43 N. E. 554, that upon a contested motion for a peremptory mandamus the only allegations contained in the relator's affidavit which are to be taken as true are the allegations of fact that are undisputed, and that any allegation contained therein which is a mere conclusion of law should not be considered. It is alleged, and not denied, that the relator was duly elected a member of the general committee from the Ninth assembly district, that he paid his annual dues, and that the committee held a meeting, and adopted a resolution expelling him from office as a member, and struck his name from the roll. These allegations, not being disputed, may possibly be taken as allegations of fact. The relator's allegation that such expulsion was wholly illegal and void, and that the committee is without power or authority to expel him, or to deprive or deter him from exercising his office, is a mere conclusion of law. If the relator desired to avail himself of such a conclusion, he was bound to set out the rules and regulations upon which such conclusion is based. Equally true is it that if the respondent committee desired to avail itself of the allegation that it was acting in accordance with its rules, and that a rule existed authorizing the expulsion of the relator, it should have set out such rule. Its allegation on this subject is a mere conclusion of law, upon which we are powerless to act, under the rule laid down in the Corrigan Case. A peremptory writ of mandamus is of an exceptional character, and will only issue where a clear legal right is made to appear, and there is no other adequate or legal means to obtain it. People v. Board of Police, 107 N. Y. 235, 13 N. E. 920. Section 2070 of the Code of Civil Procedure provides that a peremptory writ of mandamus may be issued in the first instance where the applicant's right depends only on questions of law, and that, except as prescribed in that section, or by special provision of law, an alternative writ must first be issued. The difficulty

of the situation arises from the fact that, as neither the moving paper nor the opposing affidavit contains a copy of the rules and regulations of the general committee, they are not in evidence, and we cannot take judicial notice of their contents, though they may have been filed with the custodian of primary records. We cannot say whether they contain a rule or regulation providing for and authorizing the expulsion of a member doing the acts with which the relator is charged. It would seem, however, that there is no case on these papers even for an alternative writ. The petition of the relator shows that his application really rests solely on the proposition of law that the general committee does not possess the power to expel a member except for the nonpayment of dues. If he is wrong in that proposition, his application must fail, because his petition sets forth no fact showing the violation of any legal right. The statement therein that the Democratic general committee of Kings county held a meeting and adopted a resolution expelling him from his office, and that his name was stricken from the roll of membership without his consent and against his protest, is insufficient for that purpose; nor is it aided by the allegation that this expulsion was wholly illegal and void. The facts relied upon as showing that it was illegal and void must be set forth, in order to authorize the court to interfere in his behalf. There is no allegation that the committee acted either in the absence of rules and regulations on the subject, or in disregard of such rules and regulations, or that the relator was not afforded an opportunity to be heard. The case is not unlike that of a member of a club who should seek reinstatement upon a complaint in which he alleged only that the club had unlawfully passed a resolution expelling him from membership. Such an averment as this would plainly be insufficient. For these reasons, we think that the order appealed from should be reversed.

Order reversed, with $10 costs and disbursements, and motion denied. **All** concur.